IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                                                                                                 No. 22-cr-1975 JCH

**ZOILO ORTIZ-ORTIZ,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

On June 15, 2023, Defendant Zoilo Ortiz-Ortiz ("Defendant") filed an *Opposed Motion to Disclose Any Prior Information in the Possession of the New Mexico Police Department and the Department of Homeland Security* (ECF No. 22). Having considered the motion, briefs, evidence, and applicable law, the Court will deny Defendant's motion.

**I.**    **BACKGROUND**

According to the Complaint, on November 14, 2022, Homeland Security Investigations ("HSI") Task Force Officer ("TFO") Juan Rodriguez of the New Mexico State Police ("NMSP") conducted a traffic stop of a black BMW sedan with Arizona license plate YYA-6PG traveling eastbound on Interstate 40, after he allegedly observed the car following too closely to a vehicle in violation of N.M.S.A. § 66-7-318. (*See* Compl. ¶ 7, ECF No. 1.) Mr. Ortiz-Ortiz was driving the vehicle. (*Id.* ¶¶ 8-9.) Two more officers, Bureau of Indian Affairs ("BIA") TFO Nicholas Jackson and TFO Hermillo Lucero, arrived on scene. (*See id.* ¶ 9; Def.'s Ex. D, ECF No. 22-1.) Jackson deployed his drug detection dog around the car, and the dog purportedly alerted to the presence of illegal narcotics. (Compl. ¶ 9, ECF No. 1.) Officers then searched the vehicle and located ten bundles of what appeared to be a controlled substance. (*Id.* ¶¶ 9-10.) Defendant was

subsequently indicted for possessing with intent to distribute 500 grams and more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (Indictment, ECF No. 11.)

In discovery, Defendant received a November 16, 2022, Report of Investigation written by Special Agent Patrick F. Werick of the Drug Enforcement Administration ("DEA"). (*See* Def.'s Ex. D, ECF No. 22-1.) The report detailed that on November 14, 2022, "a source of information" contacted Werick and provided information that a black BMW bearing Arizona license plate YYA-6PG was traveling from Arizona to New Mexico to deliver illegal narcotics. (*Id.*) According to the report, Werick relayed information about the tip and vehicle information to Jackson, who in turn gave the information to Rodriguez and Lucero. (*Id.*)

On June 15, 2023, Defendant filed a *Motion to Suppress Evidence* (ECF No. 20), arguing that the stop of his vehicle was not based on reasonable suspicion or probable cause, and thus unconstitutional. According to Defendant, the video evidence from Rodriguez's dash cam shows that he was more than 90 feet behind the car ahead of him, a reasonable distance that did not violate § 66-7-318. (Def.'s Mot. to Suppress 6-7, ECF No. 20.) Defendant contends that he was not stopped for a violation of the traffic code, but instead stopped without reasonable suspicion or probable cause to pursue a drug trafficking investigation. (Def.'s Mot. to Disclose 4, ECF No. 22.) An evidentiary hearing is scheduled for the motion to suppress on August 29, 2023. (Notice, ECF No. 28.)

Defendant also filed this motion to disclose, seeking "any information concerning Mr. Ortiz-Ortiz which was in the possession of the Albuquerque Office of the Department of Homeland Security or the New Mexico State Police Department prior to the traffic stop of Mr. Ortiz-Ortiz on November 14, 2022," (Def.'s Mot. to Disclose 1, ECF No. 22), including any tips from confidential

2

informants, law enforcement reports, intercepted telephone conversations, text messages, social media messages or emails, and any telephone records, (*id.* at 4). Defendant states that he needs the information prior to the evidentiary hearing to show that the stop was not supported by probable cause. (*Id.*) He also requests the Government provide all relevant *Brady* and *Giglio* information, including any impeachment material and other information concerning the reasons for the traffic stop. (*Id.* at 1, 3.)

In response to Defendant's motions, the United States disclosed the following additional information:

> On November 14, 2022, Homeland Security Investigations ("HSI") Special Agent Patrick Werick, who is based in the District of New Mexico, received a phone call from Arizona Department of Public Safety Officer Aaron Richmond. Officer Richmond informed Special Agent Werick that he had intelligence to suggest that a black sedan BMW bearing the Arizona license plate YYA6PG was potentially traveling to New Mexico that day and may be loaded with a substantial quantity of methamphetamine.
>
> Armed with this information, Special Agent Werick contacted Bureau of Indian Affairs K-9 Officer Nicholas Jackson.… Officer Jackson then informed New Mexico State Police Officers Juan Rodriguez and Hermillo Lucero and asked that they be on the lookout for the vehicle.…
>
> The officers queried the Arizona license plate in the LPR system (the license plate reader system) and learned that the black BMW had pinged in Arizona. Based on this information, they suspected that if it traveled to New Mexico it would arrive in their patrol area in approximately three hours. The officers looking out for the vehicle did not know how many passengers were inside of it and did not know the identity of the driver, who later turned out to be identified as Defendant.

(Gov.'s Resp. 1-2, ECF No. 27.) The Government asserts that Rodriguez's observation of the BMW following behind another vehicle at a close distance, approximately two car lengths, occurred before his dash cam was turned on. (*Id.* at 2.) According to the Government, the information it disclosed in its response and in the discovery file previously provided to Defendant

"is the entirety of the information that Special Agent Werick had in his possession prior to the traffic stop." (*Id.* at 2 n.1.)

Defendant in his reply attached a transcript taken from Lucero's lapel video. (Def.'s Reply 1 & Exhibit J, ECF No. 35 & 35-2.) According to the transcript, in response to Lucero's question of why DEA is with HSI, Werick replied, "I got this tip from my friend from Arizona." (Def.'s Ex. J, ECF No. 25-2 at 7 of 9.) Shortly thereafter, Lucero asked Werick why he did not get interviewed for a position and Werick said, "Cuz I'm, I'm blackballed." (*Id.*) Defendant notes that the recording appears to be redacted in parts and that it is unclear if Werick being "blackballed" has anything to do with this investigation. (Def.'s Reply 1, ECF No. 35.) Additionally, Defendant asserts that the source of information received from Arizona DPS Officer Aaron Richmond is relevant and important so Defendant can assess whether the information was properly obtained and whether there was sufficient probable cause underlying that intelligence. (*Id.* at 1-2.) Finally, Defendant requests the Government to admit or deny that he was the subject of electronic surveillance, and if so, to produce the evidence of that surveillance. (*Id.* at 2-3.)

## II.  LAW ON DISCOVERY

Federal Rule of Criminal Procedure 16(a)(1)(E) provides that the government must disclose to the defendant, upon his request, papers, documents, photographs, and objects, among other things, "if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). A defendant must make a prima-facie showing of materiality before he is entitled to obtain Rule 16 discovery. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a

defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Id.* To show materiality under Rule 16(a)(1)(E), the evidence must "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993). This materiality requirement is not a heavy burden; rather, evidence is material as long as there is a strong indication it would enable the defendant to significantly alter the quantum of proof in his favor. *See United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996).

    The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The "touchstone of materiality is a 'reasonable probability' of a different result," which exists "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). Impeachment evidence affecting a witness's credibility falls under *Brady* when the reliability of a given witness may be determinative of a defendant's guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 154 (1972). "[T]he government typically is the sole judge of what evidence in its possession is subject to disclosure", and it acts at its own peril by failing to comply adequately with an order requiring disclosure of *Brady* material. *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988).

    *Brady*'s disclosure requirements are limited to information in the government's possession or knowledge, whether actual or constructive. *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999). Although a prosecutor may not avert *Brady* obligations by keeping himself ignorant or

compartmentalizing information, *see Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984), the government has no affirmative duty under *Brady* to seek out information that is not in its or its agents' possession, *see United States v. Graham*, 484 F.3d 413, 417-18 (10th Cir. 2007) (stating there is no affirmative duty to discover information in possession of independent, cooperating witness and not in government's possession). *Brady* is nonetheless interpreted broadly to encourage prosecutors to carry out their duty to learn of favorable evidence known to others acting on the government's behalf in the case, including the police. *United States v. Combs*, 267 F.3d 1167, 1174-75 (10th Cir. 2001) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995). "Information possessed by other branches of the federal government, including investigating officers, is typically imputed to the prosecutors of the case." *Beers*, 189 F.3d at 1304. Yet, the Tenth Circuit in *Beers* held that the state's knowledge and possession of potential impeachment evidence would not be imputed to a federal prosecutor for purposes of *Brady*. *Id.* It nevertheless left open the possibility that imputation might be appropriate in a "joint investigation" by federal and state officials. *See id.* & n.2.

### III.  ANALYSIS

The Court will address in turn the disclosure of the specific categories of evidence Defendant requests.

#### A.  *Giglio* material regarding Special Agent Werick

On December 15, 2022, the Court ordered the United States to make available to Defendant, by the time required by law, evidence for which disclosure is mandated by *Brady* and *Giglio*. (Order 5, ECF No. 14.) Consequently, if the Government has evidence regarding Werick that constitutes information subject to *Brady* or *Giglio*, the United States already is obligated to disclose such information to Defendant. The duty to determine what disclosure is required under

6

*Brady* rests with the prosecution. *See Banks v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir. 1995). Given the Court's prior Order, no additional disclosure order is necessary.

### B. Source of Information

Defendant next argues that Werick's Source of Information ("SOI") is material to the defense because it is likely someone who was present and involved in the commission of the crime. The Government asserts that the person who contacted Werick is Arizona DPS Officer Aaron Richmond who said he had "intelligence" about the BMW traveling to New Mexico with methamphetamine. (Gov.'s Resp. 1, ECF No. 27.) It is unclear whether the "intelligence" is from a confidential informant's tip, electronic surveillance, or of some other form. For purposes of the evidentiary hearing, the form and contents of the intelligence is not relevant because the Government has limited its basis for the stop to the traffic violation.

When law enforcement officers rely on an alert or tip from other law enforcement officers, "the relevant inquiry is whether the officer who issued the alert—rather than the officer who conducted the challenged action—had the requisite level of suspicion." *United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1227 (10th Cir. 2008). But here, the United States is not arguing that it had reasonable suspicion to stop the vehicle based on suspicion of drug trafficking. Instead, the Government is relying solely on the following-too-closely violation to support its initial stop and on evidence it observed during the stop to support the continued detention and subsequent seizure of the contraband. The fact that officers had prior intelligence (regardless of what it was) is relevant to the credibility issue of whether Rodriguez invented grounds to stop the vehicle for a traffic violation as a pretext to pull over the vehicle to pursue a drug investigation. But, the contents of that prior intelligence is not relevant to this hearing where the Court does not need to assess whether Richmond had reasonable suspicion to support a stop for drug trafficking. *See Whren v.*

7

*United States*, 517 U.S. 806, 810-13 (1996) (constitutional reasonableness of traffic stops depends on whether police had probable cause to believe traffic violation occurred, not on subjective motivation of officer).

While the information may not be relevant to the hearing on the motion to suppress, Defendant appears to have broadened the discovery request in his reply when arguing that the SOI is material to his defense. (*See* Def.'s Reply 1, ECF No. 35.) Defendant seeks both the identity of Richmond's confidential informant, if that is the source, as well as any *Brady* or *Giglio* information concerning the confidential informant. (*Id.* at 3.)

The government has a limited privilege to withhold from disclosure the identity of informants to protect the public interest in effective law enforcement. *Roviaro v. United States*, 353 U.S. 53, 59-60 (1975). The privilege gives way, however, where disclosure is relevant and helpful to the defense or essential to a fair trial. *Id.* at 60-61. The Tenth Circuit has described the balancing of interests as follows:

> [C]ases involving confidential informants fall into several broad categories. At one extreme are the cases where the informant is a mere tipster, and disclosure is not required. At the other extreme are cases such as *Roviaro* itself where the informant has played a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to ensure a fair trial. In addition, there are cases where there is a slight possibility a defendant might benefit from disclosure, but the government has demonstrated a compelling need to protect its informant.

*United States v. Martinez*, 979 F.2d 1424, 1426 (10th Cir. 1992) (quoting *United States v. Moralez*, 908 F.2d 565, 568 (10th Cir. 1990)). A defendant seeking disclosure has the burden of proof to show a need for the disclosure. *Id.*

As an initial matter, it is unclear whether a confidential informant is even involved in this case. Assuming arguendo that the intelligence was from a confidential informant, Defendant has not met his burden to establish how any such informant's testimony will be helpful to his defense.

8

This is not a case, like *Roviaro*, where the informant and the defendant were alone and unobserved during the crucial occurrence underlying the indictment. *See Roviaro*, 353 U.S. at 64-65. Defendant here is charged with possession with intent to distribute, based on the discovery by law enforcement officers of narcotics in the vehicle in which Defendant was the driver and sole occupant. He has not shown that any such SOI is more than a mere tipster or how the SOI's information is essential to his possible defense. Mere speculation about the usefulness of an informant's testimony is insufficient to compel disclosure. *See Martinez*, 979 F.2d at 1426. Because Defendant has not met his burden under *Roviaro*, the Court will not compel the disclosure of the confidential informant, if indeed there is one, at this time.[1]

### C. Electronic monitoring

Defendant attached an affidavit stating he owns and has a privacy interest in his cell phone and that, "[b]y this motion," he requests discovery of any electronic surveillance of his phone. (Def.'s Reply 2-3, ECF No. 25.) He asks that the Court order the Government to admit or deny that he was the subject of electronic surveillance. The United States has not said whether it *now has* in its possession the evidence from Arizona DPS's investigation or whether any such information includes evidence of electronic surveillance. For the same reasons discussed above, this evidence is not relevant to the hearing on the motion to suppress. If the Government obtained recorded statements of Defendant through electronic monitoring, then those recorded statements are already subject to disclosure under the Court's discovery order and an additional order is not necessary. (*See* Order 2, ECF No. 14.)

---

[1] Notably, it is not yet clear whether the Government will rely at trial on evidence of any intelligence that Arizona DPS developed prior to the traffic stop. This ruling does not pertain to the disclosure of trial witnesses' identities or trial exhibits. For trial evidence, the Government must follow the Court's trial deadlines.

**IT IS THEREFORE ORDERED** that Defendant's *Opposed Motion to Disclose Any Prior Information in the Possession of the New Mexico Police Department and the Department of Homeland Security* (**ECF No. 22**) is **DENIED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**