## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATED OF AMERICA,

      Plaintiff,

v.                                       No. CR 22-01975 JCH

ZOILO ORTIZ-ORTIZ,

      Defendant.

### MEMORANDUM OPINION AND ORDER

Defendant Zoilo Ortiz-Ortiz filed a *Motion to Suppress Evidence* (ECF No. 20), on which this Court held an evidentiary hearing on October 3, 2023. Although Defendant in his reply raised additional issues for the first time, because those issues were not fully briefed, the Court declined to consider them in the hearing. The Court, however, allowed Defendant an opportunity to address by separate motion the issues initially raised in his reply brief. Consequently, the Court rules herein on the only issue raised by the motion, fully briefed, and addressed at the hearing: whether Agent Juan Rodriguez had reasonable suspicion or probable cause to believe Defendant committed a traffic violation to support the initial stop of the vehicle. Finding that he did based on the evidence and applicable law, the Court will deny the motion to suppress.

### I.    FACTUAL BACKGROUND[1]

On the morning of November 14, 2022, Homeland Security Investigations ("HSI") Special Agent Patrick Werick, who is based in New Mexico in the drug interdiction group, received a call from Arizona Department of Public Safety Trooper Aaron Richmond. Richmond informed Werick

---

[1] The Court finds the following facts after considering the evidence submitted and presented at the hearing.

that a black 4-door BMW bearing Arizona temporary license plate YYA6PG might be traveling through New Mexico that day with illegal narcotics. Werick then contacted Bureau of Indian Affairs K-9 Officer Nicholas Jackson, who serves as a Task Force Officer with HSI, and asked Jackson to put out a be-on-the-lookout on the vehicle.

Jackson told Werick that he ran the license number of the BMW in the License Plate Reader System, which is a law enforcement system that reads the license plates of some vehicles on the interstates. Jackson said he received a hit for the vehicle on eastbound Interstate 40 coming towards New Mexico.

New Mexico State Police Agent Juan Rodriguez was working that day on Interstate 40. His primary duties were enforcing the traffic laws on the interstates, and he has training and law enforcement experience on New Mexico state traffic laws. That morning, he received notice from either Werick or Jackson that a black BMW with Arizona license plate YYA6PG might be traveling in NM and possibly contain narcotics.

Rodriguez was in his patrol vehicle parked in the median of Interstate 40 at mile marker 126 when he first saw the black BMW with Arizona license plate YYA6PG traveling eastbound on Interstate 40. Rodriguez waited until it was safe to enter the highway, and then he began to follow the BMW, accelerating to catch up with it. Around mile markers 128 to 129, he observed the BMW following within two car lengths of the work truck in front of him. Based on the highway speeds of 75 mph and the conditions in that area, Rodriguez believed that the driver of the BMW was following too closely than was reasonable and prudent for that speed in violation of N.M. Stat. Ann. § 66-7-318.

Rodriguez then conducted a traffic stop of the BMW and issued a written warning to the driver, who was later identified as Defendant Ortiz-Ortiz, for the following-too-closely violation.

Ortiz-Ortiz signed the written warning that contained an acknowledgment that he received the notice and agreed that a violation of the law had been committed.

Rodriguez's dash camera did not activate until after he engaged his emergency equipment, which occurred after the traffic violation. The violation was thus not captured on video, even though Rodriguez could have activated his dash camera manually. According to the CAD report from the incident, there is no mention of the following too closely violation. (*See* Def.'s Hr'g Ex. E.) Because of the tip from Werick, Rodriguez intended to stop the BMW if he witnessed a traffic violation.

## II.   ANALYSIS

A traffic stop is a seizure under the Fourth Amendment, and its legality is subject to the framework established in *Terry v. Ohio*, 392 U.S. 1 (1968). *See United States v. Polly*, 630 F.3d 991, 997 (10th Cir. 2011); *United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1226 (10th Cir. 2008). Under the *Terry* analysis, a court first looks to whether the officer's action was justified at its inception. *Polly*, 630 F.3d at 997. Second, the court considers whether the detention was reasonably related in scope to the circumstances that justified the detention initially. *Id.* The Court's analysis is limited herein to the first issue – whether Rodriguez's action was justified at its inception in conducting the initial traffic stop.

"A traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *Id.* (quoting *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009)). An officer may conduct a stop if he has a reasonable suspicion that criminal activity is, has, or is about to occur. *Winder*, 557 F.3d at 1135.

Defendant argues that the stop of his vehicle was not based on reasonable suspicion or probable cause, and instead was an unconstitutional pretextual stop to investigate him for drug trafficking. According to Defendant, the video evidence from the dash cam shows that he was more than 90 feet behind the car ahead of him, a reasonable distance that did not violate § 66-7-318. In response, the Government argues that Agent Rodriguez observed the following-too-closely traffic violation before his dash cam video began recording, so the violation justifying the traffic stop was not captured by the video evidence.

Section 66-7-318 states, in relevant part: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway." N.M. Stat. Ann. § 66-7-318(A). The phrase "reasonable and prudent" in § 66-7-318 requires one to look at the road conditions, the amount of traffic nearby, and the speed of the vehicles. *State v. Chavez*, 2018-NMCA-056, ¶ 8, 427 P.3d 126.

In *Chavez*, the New Mexico Court of Appeals upheld a stop and subsequent conviction of the defendant for a following-too-closely violation of § 66-7-318. *Chavez*, 2018-NMCA-056, ¶¶ 4, 10. There, the officer testified that she observed the defendant's vehicle following another vehicle with "no sky" between the vehicles, leading her to believe the distance was less than a car length. *Id.* ¶ 2. She testified that she followed a "highway standard" that for every 10 mph, the vehicle should have a car length in between it and the vehicle in front. *Id.* The New Mexico Court of Appeals affirmed the convictions. *Id.* ¶¶ 1, 8.

In this case, the Court finds that Rodriguez's testimony was credible and that he witnessed Defendant driving two vehicle lengths behind the work truck at highway speeds. The *Chavez* case supports Rodriguez's conclusion that the BMW driver, following the truck at the distance of two

car lengths at highway speeds at or near 75 mph, violated § 66-7-318. *See also United States v. Zazueta*, No. Cr. 09-2047 JH, Mem. Op. and Order 8 (D.N.M. Mar. 25, 2010) (concluding officer had reasonable suspicion to stop vehicle for following too closely where officer testified that car driving two-to-three car lengths behind car in front of it was unreasonably close on section of winding, hilly roadway, with wildlife present in area, and a 55-mph speed limit).

In support of his argument that the Government cannot show reasonable suspicion or probable cause to support his initial detention, Defendant relies on the lack of evidence in the videos, the lack of evidence in the CAD, and the motivation of Rodriguez to stop the BMW for a drug trafficking investigation. As for the first two arguments, despite the lack of video and CAD report evidence, the Court finds Rodriguez was credible and that he witnessed the traffic violation of following too closely before his dash camera activated. Moreover, Defendant did not contest the written warning given for that violation. Turning then to the latter argument, Rodriguez's subjective motivation for wanting to determine if there was evidence of drug trafficking does not undermine the constitutional reasonableness of the traffic stop so long as he observed the BMW following the work truck too closely before he conducted the stop. *See Wren v. United States*, 517 U.S. 806, 810-13 (1996) (constitutional reasonableness of traffic stops depends on whether police have probable cause to believe traffic violation occurred, not on subjective motivation of officer); *Polly*, 630 F.3d at 997 (fact that traffic stop was ruse is legally irrelevant because officer's subjective intent or good faith does not affect reasonableness of stop). Clearly, Rodriguez wanted to stop the BMW to pursue a drug trafficking investigation, but that is permissible so long as he waited to pull over the vehicle until after witnessing a traffic violation. Because the Court finds Rodriguez's testimony credible that he observed the BMW only two car lengths behind the work truck on Interstate 40, there was probable cause to pull Ortiz-Ortiz over for a violation of N.M.

Stat. Ann. § 66-7-318. The initial stop of the vehicle was therefore constitutional, and the Court will deny the motion to suppress on that basis.

**IT IS THEREFORE ORDERED** that Defendant's *Motion to Suppress Evidence* (**ECF No. 20**) is **DENIED** based on the unconstitutionality of the initial stop of the vehicle. Defendant may file a separate motion to suppress within **FOURTEEN (14) calendar days** of receiving discovery concerning the reliability of the canine on issues that Defendant raised for the first time in his reply concerning the scope of the detention and probable cause to search the vehicle.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**